**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 11, 2003**

CAROL HAYNIE, Personal
Representative for the ESTATE OF
VIRGINIA RICH, Deceased,

    Plaintiff-Appellee,

v                                    No. 120426

THE STATE OF MICHIGAN and THE
MICHIGAN DEPARTMENT OF STATE
POLICE,

    Defendants-Appellants,

and

DANIEL KECHAK and DANIEL PAYNE,

    Defendants.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

    We granted leave to appeal in this case to consider whether gender-based harassment that is not at all sexual in nature is sufficient to establish a claim of sexual harassment

under the Civil Rights Act (CRA), MCL 37.2101 *et seq*. The circuit court granted summary disposition in favor of defendants, concluding that plaintiff had failed to establish a prima facie case of hostile work environment based on sexual harassment. The Court of Appeals reversed, concluding that gender-based harassment is sufficient to establish a claim of sexual harassment.[1] We disagree. The CRA prohibits sexual harassment, which is defined in that act as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . ." MCL 37.2103(i). Accordingly, conduct or communication that is gender-based, but is not sexual in nature, does not constitute sexual harassment as that term is clearly defined in the CRA.[2] Therefore, we reverse the judgment of the Court of Appeals and reinstate the circuit court's order granting summary disposition in favor of defendants.

I. FACTS AND PROCEDURAL HISTORY

Two capitol security officers with the Michigan State Police, Virginia Rich and Canute Findsen, shot and killed each other, while on duty. After the incident, plaintiff, the

---

[1] Unpublished opinion per curiam, issued September 28, 2001 (Docket No. 221535).

[2] The proper recourse for conduct or communication that is gender-based, but not sexual in nature, is a sex-discrimination claim, not a sexual-harassment claim.

personal representative of the estate of decedent Rich, brought suit under the CRA against the state of Michigan, the Michigan Department of State Police, and two state police supervisors. Plaintiff claimed that Findsen had sexually harassed Rich by making hostile and offensive comments about her gender, thus creating a hostile work environment that caused Rich to complain to her supervisors, who failed to take remedial action.[3]

Defendants filed a motion for summary disposition under MCR 2.116(C)(7) and (8), arguing that the alleged conduct was not sexual in nature and, thus, not sufficient to establish a claim of sexual harassment. Although plaintiff conceded that the alleged offensive conduct was not sexual in nature, she argued that the conduct was gender-based and that allegations of gender-based harassment are also sufficient to establish a claim of sexual harassment. The circuit court granted defendants summary disposition, concluding that plaintiff had failed to plead three of the five necessary elements to establish a prima facie case of hostile work environment based on sexual harassment.[4] Specifically, it concluded that

---

[3] Although the harassment of Rich allegedly came primarily from Findsen, who may have held the belief that females did not belong in law enforcement, he was not the only officer who allegedly harassed Rich.

[4] The circuit court also dismissed plaintiff's claims
(continued...)

3

plaintiff had failed to plead that Rich was subjected to unwelcome sexual conduct or communication; that the unwelcome sexual conduct or communication was intended to, or, in fact, did, substantially interfere with Rich's employment or create an intimidating, hostile, or offensive work environment; and respondeat superior.[5]

The Court of Appeals reversed the circuit court's order granting summary disposition for defendants. The Court relied

_____

[4](...continued)
against the two state police supervisors, and the Court of Appeals affirmed that decision. In addition, plaintiff voluntarily accepted the dismissal of a weight-discrimination claim.

[5] As discussed below, the five necessary elements to establish a prima facie case of hostile work environment based on sexual harassment are:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Radtke v Everett*, 442 Mich 368, 382-83; 501 NW2d 155 (1993); see also *Chambers v Trettco, Inc*, 463 Mich 297, 311; 614 NW2d 910 (2000).]

The circuit court concluded that plaintiff had failed to plead the last three elements.

on *Koester v Novi*, 458 Mich 1; 580 NW2d 835 (1998), which held that allegations of gender-based harassment can establish a claim of sexual harassment under the CRA. Defendants, the state of Michigan and the Michigan Department of State Police, applied for leave to appeal to this Court, which we granted.[6]

## II. STANDARD OF REVIEW

"The decision to grant or deny summary disposition is a question of law that is reviewed de novo." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). Also reviewed de novo are questions of statutory interpretation, such as the question at issue here—whether harassment that is not sexual in nature, but is gender-based, is sufficient to establish a claim of sexual harassment under the CRA. *Id.*

## III. ANALYSIS

The CRA, MCL 37.2202(1), provides in relevant part:

> An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Accordingly, it is unlawful for employers to discriminate against an individual with respect to a condition of

---

[6] 466 Mich 889 (2002).

5

employment because of sex.  The CRA, MCL 37.2103(i), further provides:

> Discrimination because of sex includes sexual harassment.  Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.[7]

Plaintiff alleges that the conduct in this case violated subsection iii by creating a hostile work environment.  To establish a prima facie case of hostile work environment based on sexual harassment, plaintiff must show the following:

> (1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of sex;

---

[7] Subsections i and ii are commonly known as quid pro quo sexual harassment, and subsection iii is commonly known as hostile work environment sexual harassment.

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993); see also *Chambers v Trettco, Inc*, 463 Mich 297, 311; 614 NW2d 910 (2000).]

The first element is easily met because "all employees are inherently members of a protected class in hostile work environment cases because all persons may be discriminated against on the basis of sex." *Radtke, supra* at 383. In this case, plaintiff meets the first element because Rich was an employee who was allegedly discriminated against on the basis of sex.

This Court concluded that, in order to meet the second element, a plaintiff need not show that the conduct at issue was sexual in nature; rather, a plaintiff need only show that "'but for the fact of her sex, she would not have been the object of harassment.'" *Id*. (citation omitted). This second element is derived from the language of MCL 37.2202(1), which prohibits an employer from discriminating against an employee "because of" sex. Obviously, an employer cannot be said to have discriminated against an employee "because of" sex unless, but for the fact of the employee's sex, the employer

7

would not have discriminated against the employee.  In this case, plaintiff alleges that Findsen sexually harassed Rich by making hostile and offensive comments about her gender. Accordingly, plaintiff has sufficiently alleged that, but for the fact of Rich's sex, she would not have been the object of harassment, and thus plaintiff meets the second element.

However, in order to recover for sexual harassment, plaintiff must not only show that the employee was discriminated against because of sex, she must also show that the employee was "subjected to unwelcome sexual conduct or communication." *Radtke, supra* at 382.  This third element is derived from MCL 37.2103(i), which provides that "[s]exual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . ."  In this case, plaintiff concedes that there were no "unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . . . ." Plaintiff argues, instead, that the communication was gender-based and that this type of communication can also constitute sexual harassment, pursuant to *Koester*.

In *Koester*, *supra* at 10, this Court, in a four-to-three decision, concluded that "harassment on the basis of a woman's pregnancy is sexual harassment."  Again, the CRA, MCL

8

37.2202(1), prohibits employers from discriminating against individuals on the basis of sex with respect to a condition of employment. The CRA, MCL 37.2201(d), further provides that "'[s]ex' includes, but is not limited to, pregnancy . . . ." Accordingly, discrimination because of a woman's pregnancy is a form of discrimination because of sex. However, it is obviously not the only type of discrimination because of sex under the CRA. MCL 37.2103(i) also provides that "[d]iscrimination because of sex includes sexual harassment." Accordingly, sexual harassment is another type of discrimination because of sex.

Although *Koester*, *supra* at 11, correctly recognized that "discrimination on the basis of a woman's pregnancy and sexual harassment are 'two subsets of sex discrimination,'" it incorrectly concluded, in our judgment, that "harassment on the basis of a woman's pregnancy is sexual harassment." *Id.* at 10. Even assuming that *harassment* based on pregnancy may constitute *discrimination* based on pregnancy, and thus sex *discrimination*, harassment based on pregnancy that is not at all sexual in nature simply is not sexual harassment.[8] That

_____

[8] When we refer to harassment based on pregnancy and pregnancy discrimination in this opinion, we are referring to conduct or communication that is pregnancy-based and that is *not* sexual in nature. This sort of conduct or communication is not sexual harassment. However, contrary to the dissent's contention, we do not foreclose the possibility that
(continued...)

9

is, although harassment based on pregnancy and sexual harassment *may* both constitute sex discrimination, they clearly do not both constitute sexual harassment.[9]

Pregnancy discrimination is sex discrimination, but it is not sexual harassment. In order to prove pregnancy discrimination, one must show that the employer discriminated against the employee on the basis of a pregnancy. However, in order for one to prove sexual harassment, one must show that there was either "unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . . . ."[10] MCL 37.2103(i).

_____

[8](...continued)
pregnancy-based comments may rise to the level of sexual harassment where they are also of a "sexual nature."

[9] The Court of Appeals panel in *Koester v Novi* concluded that, even though evidence of harassment based on plaintiff's pregnancy is not proof of sexual harassment, it may be proof of sex discrimination. 213 Mich App 653, 670 n 5; 540 NW2d 765 (1995). In the present case, we do not address whether harassment based on pregnancy may constitute sex discrimination because, even assuming that it does, that does not change the fact that harassment based on pregnancy is not sexual harassment, and thus, that the Supreme Court in *Koester* erred in holding otherwise. Likewise, because the plaintiff in the present case only asserts a claim of *sexual harassment*, we do not address whether harassment based on sex may constitute *sex discrimination*.

[10] As Justice Weaver in her partial dissent in *Koester* explained:

While sexual harassment technically may be a "subset" of sexual discrimination, a claim for sexual harassment requires different proofs
(continued...)

10

Accordingly, pregnancy discrimination and sexual harassment consist of substantially different elements, and thus a person asserting a claim of sexual harassment must prove something considerably different from a person asserting a claim of pregnancy discrimination.

Further, although article two of the CRA, MCL 37.2201(d), defines "sex" to include pregnancy, the Supreme Court in *Koester* erred in applying this definition of "sex" to the definition of "sexual harassment" found in article one of the CRA, MCL 37.2103(i). *Koester* stated, "to say that comments of a 'sexual nature' do not include comments about a woman's pregnancy ignores the specific definition of sex as contained in the act." *Koester,* 458 Mich 10-11. However, the definition of "sex" found in article two, which includes pregnancy, is preceded by the language, "As used in this *article* . . . ." MCL 37.2201 (emphasis added). Therefore, this definition of "sex" is only applicable to article two. That is, although "sex" includes pregnancy for the purposes of article two, "sex" does not include pregnancy for the purposes

[10](...continued)
including proof of "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." Thus, while sexual harassment is always a form of sex discrimination, all cases of sex discrimination do not necessarily amount to sexual harassment. [458 Mich 22-23.]

11

of article one, the article at issue here.  Accordingly, the *Koester* Court erred in applying article two's definition of "sex" to the definition of "sexual harassment" found in article one.

To recapitulate, the CRA, MCL 37.2202(1)(a), prohibits employment discrimination because of sex.  The CRA, MCL 37.2201(d), defines "sex" to include pregnancy.  Therefore, by concluding that harassment based on pregnancy is sexual harassment, the *Koester* Court also concluded that harassment based on *gender* is *sexual* harassment, even though such harassment is not at all of a *sexual* nature.  However, the CRA, MCL 37.2103(i), defines "sexual harassment" as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . ."  It is clear from this definition of sexual harassment that only conduct or communication that is sexual in nature can constitute sexual harassment, and thus conduct or communication that is gender-based, but that is not sexual in nature, cannot constitute sexual harassment.[11]  Accordingly,

---

[11] The dissent misconstrues our opinion as concluding that "gender-based harassment 'is not at all sexual in nature . . . .'" *Post* at 2.  To the contrary, our conclusion is not that conduct cannot be both gender-based and sexual in nature, and thus that conduct that is gender-based can never constitute sexual harassment; rather, our conclusion is simply that "conduct or communication that is gender-based, *but is not sexual in nature*, does not constitute sexual harassment as
(continued...)

12

we overrule *Koester* to the extent that it concludes that harassment based on gender that is not at all sexual in nature constitutes sexual harassment under the CRA.[12]

The CRA, MCL 37.2103(i), clearly defines a hostile-work-environment claim based on sexual harassment as one involving "unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . . . ." In this case, plaintiff concedes that there were no "unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication

_____

[11](...continued)
that term is clearly defined in the CRA." See p 2. However, if conduct is gender-based *and* sexual in nature, it may well constitute sexual harassment.

[12] The Supreme Court in *Koester* erred in relying on a United States Supreme Court case that concluded that under title VII (now title 42) "[a] trier of fact may find sexual harassment when 'the harasser is motivated by general hostility to the presence of women in the workplace.'" *Koester, supra* at 15, quoting *Oncale v Sundowner Offshore Services, Inc*, 523 US 75, 80; 118 S Ct 998; 140 L Ed 2d 201 (1998). The CRA specifically defines "sexual harassment," while title VII does not. Therefore, while the United States Supreme Court may not be bound by any specific definition of "sexual harassment," this Court is. As the Court of Appeals explained in *Koester*:

> [U]nlike the general language of title VII, the CRA specifically defines "sexual harassment" as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature. The Legislature's choice of language forecloses our reliance on title VII precedents to interpret sexual harassment under the CRA. [213 Mich App 668-669.]

13

of a sexual nature . . . ."[13]  Accordingly, plaintiff clearly has not established a claim of sexual harassment under the CRA.

## IV. STARE DECISIS

Overruling precedent must, of course, be undertaken with caution and must only be done after careful consideration of the effect of stare decisis.  That is, courts must consider "(a) whether the earlier decision was wrongly decided, and (b) whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen."  *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 757;

---

[13] The dissent states that "[p]laintiff alleged that decedent Rich . . . suffered . . . harassment of a 'sexual' nature," *post* at 2, that plaintiff's hostile-work-environment action is "allegedly nonsexual," *id.* at 6, and that "[p]laintiff's counsel did allege harassment of a sexual nature," *id.* at 25.  However, no allegations of harassment of a sexual nature can be found in plaintiff's complaint.  Further, at the hearing on defendant's motion for summary disposition, plaintiff's counsel specifically stated that the alleged harassment was *not* sexual in nature.  The dissent mistakenly looks to plaintiff's motion for reconsideration and its accompanying affidavits for support for its assertion that plaintiff alleged harassment of a sexual nature.  The trial court denied plaintiff's motion for reconsideration and the merits of that decision are not presently before this Court.  Instead, what *is* before this Court is whether the trial court erred in granting summary disposition to defendants on plaintiff's sexual-harassment claim.  Only the pleadings may be considered when a motion for summary disposition is based, as this one was, on MCR 2.116(C)(8).  MCR 2.116(G)(5).  Therefore, there is absolutely no basis to look to plaintiff's motion for reconsideration and its accompanying affidavits to determine whether the trial court erred in concluding that plaintiff's pleadings "failed to state a claim on which relief can be granted."  MCR 2.116(C)(8).

14

641 NW2d 567 (2002).

With regard to the first inquiry, we believe, as we have already observed, that *Koester* was wrongly decided.  The CRA, MCL 37.2103(i), specifically defines "sexual harassment" as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . ."  Therefore, the conclusion reached in *Koester* that gender-based harassment that is not at all sexual in nature can constitute sexual harassment is clearly wrong.

With regard to the second inquiry, we must examine "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations."  *Robinson v Detroit,* 462 Mich 439, 466; 613 NW2d 307 (2000).  We conclude that the decision in *Koester* has not become "so embedded, so accepted, so fundamental" within our legal system that overruling it will interfere with any legitimate reliance or expectation interests.  "[T]o have reliance, the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event."  *Id*. at 467.  Overruling *Koester* will not disrupt any reliance interests as neither the plaintiff's decedent nor the defendants could conceivably have relied on our decision in

15

*Koester* to their detriment. In no respect did any of them alter conduct in an attempt to conform such conduct to our decision in *Koester*. That is, assuming that the employer here did harass the plaintiff's decedent on the basis of gender, it certainly did not do so in reliance on our decision in *Koester*, which concluded that such conduct, in fact, constituted sexual harassment under the CRA. Nor could the plaintiff's decedent here have altered her conduct in any way in detrimental reliance on *Koester*.[14] Moreover, it is hard to envision how *any* employer or employee conceivably could have altered their conduct in any way in detrimental reliance on *Koester*. Further, as this Court stated in *Robinson, supra* at 467:

> [I]t is well to recall in discussing reliance, when dealing with an area of the law that is statutory . . . , that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to

---

[14] Contrary to the dissent's contention, we do not "ignore[] the effect on this particular plaintiff['s decedent], and any plaintiff with a pending hostile-environment claim that is not specifically sexual in nature." *Post* at 17. Rather, we have specifically considered and addressed this issue and, as explained above, have concluded that plaintiff's decedent could not have possibly changed her conduct in any way in reliance on our decision in *Koester*. Further, we are not deciding here that plaintiff is not entitled to *any* relief. Rather, we are simply deciding that plaintiff is not entitled to relief for the claim of hostile work environment based on sexual harassment.

16

expect . . . that they will be carried out by all in society, including the courts.  In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest.[15]

Accordingly, our decision today, that gender-based harassment that is not sexual in nature does not constitute sexual harassment under the plain language of the CRA, will not create any "practical real-world dislocations."[16]

---

[15] The dissent criticizes us for "ignor[ing] the instability that results from this Court's weak adherence to the principle of stare decisis." *Post* at 17.  However, the dissent seems oblivious to the instability that results from courts of law failing to accord serious consideration to the clear words of the law.  While the majority in this case, at least, has sought to balance these respective instabilities, the dissent appears not to recognize the latter.  Nor does the dissent appear to recognize that a recurrent source of disagreement between this majority and the dissent arises from the majority's determination to give meaning to the clear words of the law.  A principal rationale for doing this, of course, is to limit the extent to which this Court in the future must contribute to *either* of these potential sources of legal instability.  To conclude, as the dissent does, that sexual harassment includes conduct or communication of a nonsexual nature, even though MCL 37.2103(i) clearly defines "sexual harassment" as "conduct or communication of a sexual nature," would be, in our judgment, to disregard the words enacted by the Legislature and, not incidentally, create future instability in the law.

[16] During oral argument, plaintiff's counsel, himself, admitted that an overruling of *Koester* will not cause any "practical real-world dislocations":

> *Justice Young*: Do you anticipate that employers, if *Koester* is trimmed in terms of its broad implication, or overturned, that employers generally are going to change their personnel policies to reflect an ability—change from what
> (continued...)

17

For these reasons, we conclude that *Koester* was wrongly decided and that overruling it will not interfere with legitimate reliance or expectation interests. Accordingly, after considering the imperatives of stare decisis, we believe that it is appropriate to overrule *Koester* to the extent that it is inconsistent with our decision here today, and with the CRA, that harassment on the basis of gender that is not at all sexual in nature does not constitute sexual harassment.

### V. Response to the Dissent

First and foremost, the dissent seems to be confused about what this case is and is not about. This confusion has led the dissent to construe our opinion to mean something that it clearly does not mean. That is, the dissent repeatedly mischaracterizes our opinion as concluding that hostile-work-

---

[16](...continued)
they're doing now?

    *Mr. Boog*: No because I think most employers want their employees to be free of any type of harassment.

    *Justice Young*: I'm asking do you anticipate, given your experience, that they'll change their policies.

    *Mr. Boog*: I would tell them to keep the same policies for the sake of employee morality [sic].

Further, employers will still have to consider the possibility of liability under the different language of title VII of the federal civil rights act.

environment actions are limited to claims of a sexual nature. At no point in this opinion do we draw such a conclusion. Rather, the only conclusion that we reach is the unremarkable one that, because the CRA specifically defines sexual harassment as "conduct or communication of a sexual nature," MCL 37.2103(i), in order to establish a hostile-work-environment case based on sexual harassment, a plaintiff must show that the conduct complained of was sexual in nature. That is sexual harassment means *sexual* harassment. The dissent would construe sexual harassment to mean harassment of any kind.

The dissent argues that we should reach this conclusion because, since an employer cannot discriminate against an employee on the basis of gender, MCL 37.2202(1)(a), it necessarily follows that "an employer may not turn a blind eye to conduct that creates a hostile work atmosphere," *post* at 8, on the basis of gender. However, we do not even address the substance of this argument because plaintiff's only allegation here is that the employee was *sexually* harassed and that this sexual harassment created a hostile work environment.[17]

---

[17] Contrary to the dissent's contention, it is clear from plaintiff's complaint that she is seeking recovery on the basis of a sexual-harassment claim. Specifically, plaintiff's complaint states, "[t]his is an action primarily for offensive work environment-sexual and weight *harassment* . . . ;" "[t]hroughout the course of Decedent Rich's employment, and
(continued...)

19

Therefore, the only issue before us is whether plaintiff has established a prima facie case of *sexual* harassment. Accordingly, there is no need for us to reach out and address whether the CRA recognizes a claim for hostile work environment based on anything other than sexual harassment.[18]

---

[17](...continued) including, but not limited to within three years of her death, Decedent Rich was *sexually harassed . . . ;*" and "[t]he conduct of Defendants, and the agents, employees and representatives of Defendants State of Michigan and Michigan Department of State Police in *sexually harassing* Decedent Rich . . . ." [Emphasis added.] In addition, as the dissent recognizes, during oral argument, when specifically asked if the only claim that was alleged was one based on sexual harassment, plaintiff's counsel answered in the affirmative.

[18] Contrary to the dissent's overheated assertions, our opinion does not "oversimplif[y] the Civil Rights Act's hostile-work-environment proscription," "necessarily confine[] hostile-work-environment claims to those authorized by MCL 37.2103(i)(iii)," "severely constrict[] the scope of Michigan's Civil Rights Act," or "eviscerate[] Michigan's hostile-work-environment jurisprudence" by "necessarily precluding the recognition of actions for hostile work environments based on religion, race, color, national origin, age, sex (inasmuch as the harassment is not overtly 'sexual'), height, weight, or marital status under § 2202 of Michigan's Civil Rights Act." *Post* at 2, 6, 8. Instead, our opinion does not even address whether Michigan's Civil Rights Act creates a hostile-work-environment action based on something other than sexual harassment because, as explained above, all that is before us today is a hostile-work-environment action that *is* based on sexual harassment. Plaintiff has not even attempted to bring a hostile-work-environment action based on anything other than sexual harassment. Contrary to the dissent's assertion, we are not concluding that "victims of discrimination [may no longer] assert hostile-work-environment claims unless the activity at issue is 'sexual' in nature," *post* at 16; instead, what we are concluding here today is that a plaintiff may not assert a hostile-work-environment claim *based on sexual harassment* without showing that the complained

(continued...)

See n 9.

Further, we disagree with the dissent's assertion that this Court is somehow bound to interpret Michigan's Civil Rights Act in accordance with the federal courts' interpretation of the federal civil rights act. See n 11. Even if, as the dissent states, the Michigan Legislature relied heavily on the federal civil rights act in drafting Michigan's Civil Rights Act, the Michigan Legislature was clearly not bound by the federal civil rights act. That is, the Michigan Legislature was free to adopt a civil rights act that differed from the federal civil rights act, and although, as the dissent points out, there are many similarities between the two acts, the Michigan Legislature did, in fact, choose to adopt an act that is different from the federal act. Despite the dissent's determination not to allow them to do so, the

---

[18](...continued)
of conduct was of a sexual nature.

The dissent further criticizes us for failing to recognize that in a hostile-work-environment action a plaintiff need not prove that she suffered a "tangible employment action" or an "economic loss." *Post* at 10, 26. We are baffled by this criticism because nowhere in this opinion do we even suggest that a plaintiff in a hostile-work-environment action must prove that she suffered a tangible employment action or an economic loss. Instead, we simply conclude that, because it is uncontested that the conduct complained of here was not at all sexual in nature, plaintiff has not established a prima facie case of hostile work environment based on sexual harassment because the CRA clearly defines sexual harassment as "conduct or communication of a sexual nature . . . ." MCL 37.2103(i).

21

Michigan Legislature is allowed to determine for itself the extent to which it wishes to track the language of the federal law. In particular, Michigan's Civil Rights Act is different from the federal civil rights act with regard to its treatment of sexual harassment. The dissent fails to respect this difference and, instead, concludes that because these acts are nearly identical they must be construed to mean exactly the same thing. We cannot agree that any time the Michigan Legislature creates a law that is "similar" to a federal law, it must be made identical, and the two laws must be interpreted to mean exactly the same thing.[19]

---

[19] The dissent criticizes us for "depart[ing] from this sound tradition, and in doing so mak[ing] sweeping changes to our employment-discrimination jurisprudence." *Post* at 6. To say the least, it is no "sweeping change" to construe different laws in a different manner. Unlike the dissent, we refuse to ignore the Michigan Legislature's express definition of "sexual harassment," and, instead, to adopt the federal courts' definition of "sexual harassment" pursuant to an altogether different law. This refusal is not based on a preference for one definition over the other, but on our recognition of our obligation to adhere to the clear language of the law.

The dissent characterizes our attempt to give effect to the Legislature's express definition of "sexual harassment" as "a perfunctory textual analysis that misconstrues our Legislature's intent." *Post* at 8. It is unfortunate that the dissent feels this way because we do not know how the Legislature could have made its intent any more clear. The Legislature defined "sexual harassment" as "conduct or communication of a sexual nature . . . ." MCL 37.2103(i). In light of this clear definition, we are at a loss to know how the dissent can conclude with a straight face that the Legislature intended sexual harassment to include conduct or

(continued...)

22

Title VII of the federal civil rights act, like the Michigan Civil Rights Act, prohibits discrimination because of sex. However, unlike our civil rights act, title VII does not specifically prohibit and define "sexual harassment." Our civil rights act specifically defines "sexual harassment" as "conduct or communication of a sexual nature . . . ." MCL 37.2103(i). Title VII, on the other hand, simply prohibits discrimination because of sex and the federal courts have construed this to include sexual harassment. *Meritor Savings Bank, FSB v Vinson*, 477 US 57, 66-67; 106 S Ct 2399; 91 L Ed 2d 49 (1986). That is, "federal case law has created a cause of action for sexual harassment under the general prohibition against gender discrimination," *Koester,* 213 Mich App 668, while, the Michigan Legislature has specifically created a cause of action for both sex discrimination and sexual harassment.[20]

---

[19](...continued)
communication of a nonsexual nature. If, as the dissent seems to believe, sexual harassment includes conduct or communication of a sexual *and* of a nonsexual nature, wouldn't that mean that sexual harassment simply includes *all* conduct or communication? Unlike the dissent, we are comfortable in concluding that the Legislature intended what it said. Further, we do not find the Legislature's intent that "sexual harassment" means harassment that is sexual in nature to be in the slightest bit surprising or unexpected.

[20] For these reasons, we agree with the analysis in the Court of Appeals decision in *Koester,* 213 Mich App 668-669, and in the partial dissent to this Court's decision in
(continued...)

23

## VI. Conclusion

The CRA prohibits sexual harassment, which is defined in that act as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . ."  MCL 37.2103(i).  Accordingly, conduct or communication that is gender-based, but is not sexual in nature, does not constitute "sexual harassment" as that term is defined in the CRA.  Therefore, in this case, where plaintiff concedes that the communication was not sexual in nature, but contends that it was gender-based, plaintiff has not set forth a claim of sexual harassment under the CRA. For these reasons, we reverse the judgment of the Court of Appeals and reinstate the circuit court's order granting summary disposition in favor of defendants.

> Stephen J. Markman
> Maura D. Corrigan
> Clifford W. Taylor
> Robert P. Young, Jr.

---

[20](...continued)
*Koester,* 458 Mich 23-24, concluding that we should not rely on title VII precedents to interpret sexual harassment under the language of our very different civil rights act.

# STATE OF MICHIGAN

## SUPREME COURT

CAROL HAYNIE, Personal
Representative for the ESTATE OF
VIRGINIA RICH, Deceased,

    Plaintiff-Appellee,

v                                                                No. 120426

THE STATE OF MICHIGAN and THE
MICHIGAN DEPARTMENT OF STATE
POLICE,

    Defendants-Appellants,

and

DANIEL KECHAK and DANIEL PAYNE,

    Defendants.

_____

WEAVER, J. (*concurring*).

    I concur in the result and reasoning of the majority,
except that I do not join in part V, "Response to the
Dissent."

                          Elizabeth A. Weaver

CAROL HAYNIE, Personal
Representative for the ESTATE
OF VIRGINIA RICH, Deceased,

    Plaintiff-Appellee,

v                                   No. 120426

THE STATE OF MICHIGAN and
THE MICHIGAN DEPARTMENT OF
STATE POLICE,

    Defendants-Appellants,

and

DANIEL KECHAK and DANIEL PAYNE,

    Defendants.

_____

CAVANAGH, J. (*dissenting*).

    Today the majority rejects plaintiff's sex-based hostile-work-environment claim because it is not sexual in nature. According to the majority, "conduct or communication that is gender-based, but is not sexual in nature, does not constitute sexual harassment as that term is clearly defined in [MCL 37.2103(i) of] the [Civil Rights Act]." *Ante* at 2. By dismissing plaintiff's claim, the majority severely constricts the scope of Michigan's Civil Rights Act,

necessarily precluding the recognition of actions for hostile work environments based on religion, race, color, national origin, age, sex (inasmuch as the harassment is not overtly "sexual"), height, weight, or marital status under § 2202 of Michigan's Civil Rights Act.

Because the majority oversimplifies the Civil Rights Act's hostile-work-environment proscription and mistakenly concludes that gender-based harassment "is not at all sexual in nature," I must respectfully dissent. *Ante* at 1.

### Facts & Proceedings

Plaintiff alleged that decedent Rich, employed for more than twenty-five years as a capital security officer with the Michigan State Police, suffered weight- and gender-based harassment, as well as harassment of a "sexual" nature.[1]

The trial court summarily disposed of plaintiff's sexual-harassment claim on defendant's motion, concluding that the alleged conduct was gender-based and, thus, not of a "sexual" nature, as required by § 2103(i)(iii).

Plaintiff's counsel submitted a motion for reconsideration, which was supported by an affidavit from decedent's sister.[2]  The affidavit alleged that decedent had

---

[1]Joint Appendix, p 19a (para 31), citing MCL 37.2101.

[2]Brief in Support of Plaintiff's Motion for Rehearing and Reconsideration, filed May 5, 1998, in the Ingham Circuit
**(continued...)**

2

repeatedly and continually received sexually explicit cartoons and other material of a sexual nature in her mailbox, to which her supervisors failed to adequately respond.[3]  Counsel also attached a grievance filed by decedent against a coworker, claiming the colleague pushed and hit her, and used "sexual harassment talk" to make her look like "one of the guys" in front of the new recruits.[4]  In addition, the grievance alleged that the same individual directed additional unwelcome sexual comments at decedent.[5]  The trial judge denied plaintiff's motion for reconsideration and refused to allow plaintiff's counsel to amend the complaint.

Plaintiff filed an interlocutory appeal, which the Court of Appeals denied.  After the parties stipulated the dismissal of plaintiff's weight-based harassment claim, plaintiff filed an appeal as of right with the Court of Appeals, which reversed, holding that plaintiff alleged facts sufficient to support a sexual-harassment claim.

_____

[2](...continued)
Court.

[3]Perreault Affidavit, paragraphs 5, 10, p 2.

[4]See attachment to plaintiff's motion for reconsideration, filed May 5, 1998.

[5]*Id.*

3

The Elliott-Larsen Civil Rights Act

When the Michigan Legislature drafted our Civil Rights Act, MCL 37.2101 *et seq.*, it relied heavily on the original federal title VII statutes banning workplace discrimination. Reviewing the text of each confirms this design. MCL 37.2202(1) of Michigan's Civil Rights Act provides:

An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Similarly, the federal statute provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or

4

national origin.  [42 USC 2000e-2.]

But for the addition of age, height, weight, and marital status as prohibited grounds of discrimination, as well as a few minor drafting variations, MCL 37.2202(1) and 42 USC 2000e-2 would be identical.

As with any statute subject to judicial review, our courts have developed rules that articulate the necessary elements of statutory claims.  Because Michigan's employment-discrimination statute so closely mirrors federal law, we often rely on federal precedent for guidance.  See *Radtke v Everett,* 442 Mich 368, 381-382; 501 NW2d 155 (1993), quoting *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 525; 398 NW2d 368 (1986) ("While this Court is not compelled to follow federal precedent or guidelines in interpreting Michigan law, this Court may, 'as we have done in the past in discrimination cases, turn to federal precedent for guidance in reaching our decision.'").  As a result, employment-discrimination actions under state law are nearly identical to federal actions.  For example, our courts have recognized both disparate-treatment and disparate-impact actions identical to those articulated by the United States Supreme Court.[6]

---

[6] See *Lytle v Malady (On Rehearing),* 458 Mich 153, 173 n 19; 579 NW2d 906 (1998), citing *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973) (observing that Michigan adopted the four-part disparate-
(continued...)

Regrettably, the majority now departs from this sound tradition and, in doing so, makes sweeping changes to our employment-discrimination jurisprudence. Hostile-work-environment actions, available on the basis of any ground articulated in the federal statute, will now be limited to claims of a sexual nature under our state Civil Rights Act.

By dismissing plaintiff's allegedly nonsexual hostile-work-environment action, the majority necessarily confines hostile-work-environment claims to those authorized by MCL 37.2103(i)(iii) and rejects federal precedent that recognizes hostile-work-environment actions on the basis of statutory text nearly *identical* to our own, i.e., § 2202. Although the majority has not acknowledged the effect of its holding, it is important to emphasize that the Court would not dismiss plaintiff's sex-based claim if it recognized that hostile-work-environment actions could be brought under § 2202.

Today's ruling is particularly significant because a hostile-work-environment claim is the only statutory remedy cognizable when an employee suffers pervasive and severe forms

---

(...continued)
treatment proof from the United States Supreme Court's *McDonnell Douglas* test to prove a prima facie case of discrimination); *Smith v Consolidated Rail Corp*, 168 Mich App 773, 776; 425 NW2d 220 (1988), citing *Albemarle Paper Co v Moody,* 422 US 405, 425; 95 S Ct 2362; 45 L Ed 2d 280 (1975) (articulating disparate-impact action as prescribed by the Supreme Court).

6

of discrimination, but experiences no tangible employment action.  No longer will an employee subject to a sex-based (but not overtly sexual) hostile work environment find redress, even though an employer may fail to adequately respond.

Hostile-Work-Environment Actions

Although this Court has never before expressly analyzed the origin of nonsexual hostile-work-environment claims under our Civil Rights Act, our courts have recognized that such claims may be asserted on the basis of any ground enumerated in Michigan's Civil Rights Act in MCL 37.2202.  *Malan v Gen Dynamics Land Sys, Inc*, 212 Mich App 585, 587; 538 NW2d 76 (1995) (holding that a hostile-work-environment claim is actionable on the basis of any one of the enumerated classifications in MCL 37.2202), citing *Rasheed v Chrysler Corp,* 445 Mich 109; 517 NW2d 19 (1994) (religion-based harassment from coworkers and supervisors); *Sumner, supra* at 538 (race-based harassment from supervisors as a continuing violation); *Meek v Michigan Bell Co,* 193 Mich App 340, 342-343; 483 NW2d 407 (1992) (sex-based and religion-based harassment from supervisors); see also *Jackson v Quanex Corp,* 191 F3d 647 (CA 6, 1999) (recognizing race-based, hostile-environment action under the Civil Rights Act); *Downey v Charlevoix Co Bd of Rd Comm'rs*, 227 Mich App 621; 576 NW2d 712

(1998) (recognizing disability-based, hostile-work-environment action).    These rulings both identify and effectuate our Legislature's intent to prohibit prejudicial discrimination in the employment realm.

Lamentably, the majority now eviscerates Michigan's hostile-work-environment jurisprudence with a perfunctory textual analysis that misconstrues our Legislature's intent. To clarify the errors present in the majority's reasoning, I will examine the text of the statute in light of its history and context.

### MCL 37.2202

The broad language of Michigan's Civil Rights Act expressly prohibits acts that "discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment . . . ." MCL 37.2202(1)(a).  Neither may an employer "[l]imit, segregate, or classify an employee . . . in a way that deprives or tends to deprive the employee . . . of an employment opportunity, or otherwise adversely affects the status of an employee . . . ." MCL 37.2202(1)(b).  This mandate prohibits employment conditions that are likely to deprive an employee of an opportunity or negatively affect her employment status.  In other words, an employer may not turn a blind eye to conduct that creates a hostile work atmosphere on the grounds

8

enumerated above.

The United States Supreme Court has interpreted the analogous federal statute—containing language nearly identical to MCL 37.2202 of our Civil Rights Act—and has concluded that its text supports hostile-work-environment claims on the basis of any ground enumerated in 42 USC 2000e-2. According to that Court, the prohibition on discrimination "is not limited to 'economic' or 'tangible' discrimination." *Meritor Savings Bank, FSB v Vinson*, 477 US 57, 64; 106 S Ct 2399; 91 L Ed 2d 49 (1986). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women,'" and extends to all forms of discrimination prohibited by the federal statute. *Meritor, supra* at 64, and at 66, citing *Firefighters Institute for Racial Equality v St Louis,* 549 F2d 506 (CA 8, 1977) (race); *Compston v Borden, Inc,* 424 F Supp 157 (SD Ohio, 1976) (religion); and *Cariddi v Kansas City Chiefs Football Club,* 568 F2d 87, 88 (CA 8, 1977) (national origin).

> The phrase terms, conditions or privileges of employment in [title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination . . . . One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers . . . .

9

[*Meritor, supra* at 66, citing *Rogers v Equal Employment Opportunity Comm,* 454 F2d 234, 238 (CA 5, 1971).]

With this recognition, the Supreme Court clarified that the plain text of the federal statute prohibits severe and pervasive employment discrimination—what we often refer to as a hostile work environment—without regard to whether a plaintiff suffers a tangible employment action. Instead of acknowledging our identical legislative directive in § 2202, which imposes no economic-loss requirement, the majority ignores its relevance and focuses exclusively on subsection 2103(i), which simply clarifies that sex discrimination includes sexual harassment. While I agree that subsection 2103(i) clarifies which forms of sexual harassment are prohibited, it does not narrow MCL 37.2202, which outlaws employer-sanctioned work environments hostile to employees on the basis of, inter alia, sex.

## MCL 37.2103(i)

The majority rejects my interpretation because MCL 37.2103(i) expressly authorizes sexual-harassment, hostile-work-environment claims, while the federal statute contains no similar statutory counterpart. Apparently, the majority assumes the legislative directive with regard to sexual harassment in subsection 2103(i) precludes hostile-environment claims on other bases, i.e., if our Legislature had wanted to

10

prohibit work environments inhospitable to employees on the basis of, inter alia, race, religion, or sex, it would have stated as much. However, this often disfavored canon of negative implication is less than persuasive, particularly when the origin of MCL 37.2103(i) is understood in context.

As the text indicates, our Legislature enacted 1980 PA 202, later codified as MCL 37.2103(i), to clarify that sexual harassment was, indeed, prohibited by Michigan's Civil Rights Act. In drafting the text, the Legislature relied heavily on language used by the federal agency charged with enforcing the federal employment rights act, the Equal Employment Opportunity Commission.

As originally enacted, 29 CFR 1604.11 provided:

> (a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. [1] Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when
>
> (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment,
>
> (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or
>
> (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

[1] The principles involved here continue to apply to race, color, religion or national origin.

Our statute is nearly identical. MCL 37.2103(i) provides:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

By codifying the federal guidelines, our Legislature merely clarified that the sexual-harassment protections in the federal statutes were analogous in scope to those in Michigan's Civil Rights Act. Both those lobbying for and against the bill agreed that harassment cases in general—and sexual-harassment cases in particular—could be brought under the current statute. House Analysis, HB 4407 (August 15, 1980). In fact, opponents of the bill argued the amendment might cause confusion within the judicial branch:

12

The civil rights act's coverage of sexual harassment should not be changed as proposed by the bill. The act currently covers sexual harassment in the same manner as it is covered by the federal government in Title VII cases. That is, sexual harassment is covered under the general language prohibiting sexual discrimination. There has been a series of administrative and judicial cases clearly enunciating the appropriateness of this coverage, and it is feared that future anti-sexual harassment court decisions based on federal provisions and precedents would not be applicable or have a significant impact on Michigan if this state was prohibiting sexual harassment under different statutory language than used on the federal level. [*Id.* at 3.]

While acknowledging this concern, those in favor of the provision felt that the amendment was "necessary to 'motivate' the [Michigan Department of Civil Rights] to treat sexual harassment as a bona fide civil rights violation . . . ." *Id.* at 2. Before this enactment, the Department of Civil Rights often refused to pursue sexual-harassment claims unless the victim was also a member of a minority group. *Id.* Forebodingly, members of the Legislature worried that, with the addition of MCL 37.2103(i), the Michigan judiciary might reject the utility of federal precedent in nonsexual hostile-work-environment actions even though clearly authorized by MCL 37.2202(1). Unfortunately, this fear has come to pass.

The majority would reject my construction, claiming it gives limited meaning to 1980 PA 202. After all, if the Civil Rights Act already prohibited discriminatory and hostile work environments, 1980 PA 202 added little. Adding little,

13

however, does not mean adding nothing. As noted in the House Bill Analysis, the enactment did *clarify* that sexual harassment was prohibited. This affirmation was necessary in light of the number of federal district court decisions that refused to acknowledge that quid pro quo sexual harassment constituted discrimination based on sex. See *Miller v Bank of America,* 418 F Supp 233, 234 (ND Cal, 1976) ("essentially the isolated and unauthorized sex misconduct of one employee to another" not recognizable under title VII), rev'd *Miller v Bank of America,* 600 F2d 211 (CA 9, 1979) (finding as a matter of law that conduct of a sexual nature constituted discrimination based on sex). Because the Michigan Department of Civil Rights, which was responsible for enforcing the act, all but refused to pursue such claims, our Legislature could not leave it to the agency to address the issue as Congress could. Viewed in context, one has little doubt that 1980 PA 202 served a significant purpose, even if it merely reiterated the scope of protections afforded by the Civil Rights Act.

Moreover, any alleged redundancy under my interpretation of MCL 37.2103(i)(iii) is also present in the majority's interpretation of subsections 2103(i)(i) and 2103(i)(ii) (often referred to as quid pro quo harassment). Unless the majority would construe the discrimination ban in employment (MCL 37.2202), public accommodations (MCL 37.2302), and

14

education (MCL 37.2402) in a manner that would otherwise permit unwelcome conduct of a sexual nature, then it must agree that subsection 2103(i) merely clarified what the Civil Rights Act had already proscribed. To now construe MCL 37.2103(i) in a fashion that limits the scope of protections present throughout the act ignores both its specific text and overall structure.

Although, on occasion, I have agreed with earlier holdings that note that Michigan's sexual-harassment doctrine has a specific statutory basis in contrast to its federal statutory counterpart,[7] I find no legitimate reason to conclude that hostile-work-environment claims should be limited to incidents of harassment that are sexual in nature. The plain text of the Michigan Civil Rights Act requires this interpretation.

The majority's failure to acknowledge the effect of its decision is quite unfortunate. If plaintiff's gender-based hostile-work-environment claim must be dismissed because it is not of an overtly "sexual" nature, then work environments inimical to a reasonable person on the basis of religion, race, color, national origin, age, sex (inasmuch as it refers to "gender-based" discrimination), height, weight, or marital

---

[7] See *Chambers v Trettco, Inc,* 463 Mich 297; 614 NW2d 910 (2000); *Quinto v Cross & Peters Co,* 451 Mich 358; 547 NW2d 314 (1996).

15

status are no longer actionable.  This interpretation cannot be rationally construed from the text of Michigan's Civil Rights Act.

Stare Decisis

In its hasty attempt to explain Michigan's civil-rights jurisprudence, the majority continues by overruling *Koester v Novi,* 458 Mich 1; 580 NW2d 835 (1998), and clarifying that pregnancy, though not at issue here, is not of a sexual nature.  However, as I indicated in the *Koester* majority opinion:

> Under [that] reasoning, claims of racial harassment would also fail (despite being recognized by the federal courts), because the act prohibits racial "discrimination" not "racial harassment."  This interpretation defies logic. See *Harrison v Metropolitan Gov't of Nashville & Davidson Co,* 80 F3d 1107 (CA 6, 1996), and *Snell v Suffolk Co,* 782 F2d 1094 (CA 2, 1986) (allowing a claim for racial harassment).  [*Koester, supra* at 11 n 3.]

The majority purportedly justifies this shift by attempting to clearly mark the boundaries of all things "sexual."  In narrowly defining subsection 2103(i), the Court attempts to foreclose actions previously recognized on the basis of, inter alia, race, "gender," national origin, or religion.  No longer may victims of discrimination assert hostile-work-environment claims unless the activity at issue is "sexual" in nature.  This sweeping change is a direct result of the majority's rejection of *Koester*.  Though the

16

majority opinion belies the significance of this shift, Justice Taylor clarified the stakes at oral argument:

> *Justice TAYLOR*: Wouldn't the distinction between these two causes of action be that in the case of discrimination the employee has to endure certain kinds of unpleasant remarks until such time as there is an adverse job action of some kind. In the case of sexual harassment that isn't true. The person who is the victim of that only need prove that there has been a substantial interference with the employee's employment or that this is creating an intimidating, hostile or offensive work environment.
>
> [*Attorney for Plaintiff*]: I would agree with that.
>
> *Justice TAYLOR*: Isn't that the great sort of overarching sort of written in neon understanding of this.
>
> [*Attorney for Plaintiff*]: I would agree with that.

Although a majority now claims that overruling *Koester* would work no "undue hardship because of reliance interests or expectations that have arisen," *ante* at 15, I suspect few advocates in plaintiffs' bar would agree. *Robertson v DaimlerChrysler Corp,* 465 Mich 732, 757 (2002). Moreover, the contention that overruling *Koester* would produce no "real-world dislocations," *ante* at 17, ignores the effect on this particular plaintiff, and any plaintiff with a pending hostile-environment claim that is not specifically sexual in nature. To claim that "it is hard to envision how *any* employer or employee conceivably could have altered their

17

conduct in any way in detrimental reliance on *Koester*" ignores the instability that results from this Court's weak adherence to the principle of stare decisis. *Ante* at 16 (emphasis in original).[8]

To summarize, the majority overrules precedent and rejects plaintiff's claim because our Legislature did not specifically articulate the parameters of hostile-work-environment claims for conduct not overtly sexual in nature. In doing so, the Court relies on a rather weak canon of negative implication[9] and ignores the plain text of MCL 37.2202, which does not require an economic injury. The Court also dismisses our Legislature's intention to mimic the scope

---

[8]To reassure its audience that overruling *Koester* is appropriate, the majority quotes from Justice Young's dialogue with plaintiff's counsel at oral argument. *Ante* at 18 n 16. However, simply because counsel agreed that rejecting *Koester* would produce no "practical real-world dislocations . . . .", it is important to note that only those employers subject to the federal statutes will be forced to adhere to the higher standards. Moreover, while employment handbooks provide useful indicators of employers' policies, few harassing work environments are officially condoned. More often, employers or their supervisors simply fail to respond adequately to harassment from coworkers, as alleged by plaintiff in this case. Therefore, although responsive to Justice Young's inquiry, I find little solace in counsel's claim that he would recommend employers retain their current employment policies—in spite of their decreased liability pursuant to this decision.

[9]Eskridge, Frickey, & Garrett, *Legislation and Statutory Interpretation,* (Foundation Press: New York, 2000) p 256 ("Descriptively, people do not necessarily intend their list of directed activities to be comprehensive ones or even think through all the permutations to which their directives might be applied.").

18

of protections afforded by federal antidiscrimination law, as evident in the textual similarities of MCL 37.2202 and 42 USC 2000e-2. Finally, in a most ironic twist, the majority overrules *Koester* under the guise of its respect for the rule of law, i.e, statutory meaning should be predictable, accessible, and neutrally applied. In light of the text employed by our Legislature, which indicates a desire to extend protections parallel in scope with federal law, our Court's reliance on federal precedent for guidance, and this Court's precedent in *Koester*, I cannot agree that the majority's interpretation furthers either our Legislature's intent or the rule of law.

Sexual Harassment Includes Gender-Based Discrimination

Though unnecessary to clarify the availability of "gender-based" hostile-work-environment claims for the reasons stated above, it is worth noting that the plain text of subsection 2103(i) alone permits gender-based claims. When "verbal or physical conduct or communication of a sexual nature" is made a condition of or substantially interferes with, inter alia, employment, the conduct is proscribed. *Id.* This prohibition was enacted not because all things sexual are inherently discriminatory when targeted at an individual on the basis of her sex, but because sexual conduct that exploits our socially constructed concepts of gender perpetuates

19

unlawful discrimination.

Our courts have recognized that conduct of a "sexual" nature is not prohibited simply because it is "of or pertaining to sex or the attribute of being either male or female" or "existing or predicated with regard to sex." *Oxford English Dictionary* (2d ed). Rather, unwelcome sexual conduct is prohibited because it risks exploiting gender-based inequality.[10] As noted in *Radtke*:

> [S]exual harassment is prohibited in the workplace because it violates civil liberty:

> "Sexual harassment should be explicitly . . . prohibited because it is a demeaning, degrading, and coercive activity directed at persons on the basis of their sex, the continuation of which is often contingent on the harasser's economic control over the person being harassed. It should be outlawed because it violates basic human rights of privacy, freedom, sexual integrity and personal security." [*Radtke, supra* at 380-381, quoting House Bill Analysis 4407 (August 15, 1980).]

Just five years ago, in *Koester*, this Court acknowledged

---

[10] Legal scholars have articulated this link:

> [W]omen are socially defined as women largely in sexual terms. The behaviors to which women are subjected in sexual harassment are behaviors specifically defined and directed toward the characteristics which define women's sexuality: secondary sex characteristics and sex-role behavior. It is no accident that the English language uses the term sex ambiguously to refer both to gender status (as in "the female sex") and to the activity of intercourse (as in "to have sex"). The term *sexual* is used in both senses. [MacKinnon, *Sexual Harassment of Working Women* (Yale University Press: New Haven, 1979), p 182.]

20

that harassing conduct need not be specifically motivated by sexual desire to support an inference of discrimination. It is sufficient that the conduct "is motivated by general hostility to the presence of women in the workplace." *Koester, supra* at 15, quoting *Oncale, supra* at 80.

> "'To be sure, the phrase "sexual harassment" can be a misnomer. As several [federal] circuits have now recognized, the touchstone of an actionable . . . sexual harassment claim is not whether the offensive conduct includes "sexual advances or . . . other incidents with clearly sexual overtones." . . . The critical inquiry "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." [*Koester, supra* at 13 (citations omitted), quoting *Mentch v Eastern Savings Bank, FSB*, 949 F Supp 1236, 1245-1246 (D Md, 1997), quoting *Harris v Forklift Systems, Inc,* 510 US 17, 25; 114 S Ct 367; 126 L Ed 2d 295 (1993).]

Contrary to the majority's assertion, only by acknowledging the link between sexual conduct and gender-based inequality can the sexual-harassment provision, MCL 37.2103(i), be rationally applied.

Clarification of the Scope of this Action

The majority's ardent response to my dissent suggests I have misunderstood its position and the scope of its holding. Ultimately, the reader will judge the accuracy of that accusation. Nevertheless, I believe a certain degree of clarification is required.

The majority claims that plaintiff only alleged a sexual-

21

harassment claim and, therefore, "there is no need for [it] to reach out and address whether the CRA recognizes a claim for hostile work environment based on anything other than sexual harassment." *Ante* at 20. However, this position disregards the allegations articulated in plaintiff's complaint. Plaintiff claimed the conduct of defendant's employees, "in sexually harassing [d]ecedent Rich, constitutes sexual *discrimination* in violation of *MCL 37.2101 . . . et seq.*" (Emphasis added.) Plaintiff stated that the "harassment included, but was not limited to, frequent comments regarding [d]ecedent Rich's gender, weight and ability as a Capitol Security Officer" and, "on many occasions, [Findsen] made hostile and offensive comments to [d]ecedent Rich regarding her sex, weight and ability as a Capitol Security Officer." Though the majority cannot dispute "sex discrimination," as proscribed by MCL 37.2202(1), has been alleged, it apparently presumes that plaintiff seeks recovery only under a narrow subcategory of "sex discrimination," i.e., sexual harassment as defined by MCL 37.2103(i)(iii). The majority claims that this assumption justifies its refusal to entertain a hostile-work-environment claim based on sex, which includes gender.

Unfortunately, this interpretation deprives plaintiff of a fair and honest reading of the complaint and altogether ignores plaintiff's position, as repeatedly documented in her

briefs to the circuit court, the Court of Appeals, and this Court. Plaintiff noted that both federal and Michigan courts "are increasingly recognizing claims for workplace harassment that go beyond traditional sexual harassment cases."[11] To support this claim, plaintiff's counsel cited Michigan precedent holding "that harassment based on any one of the enumerated classifications [in MCL 37.2202] is an actionable offense." See n 11, each citing *Malan v General Dynamics Land Systems, Inc,* 212 Mich App 585; 538 NW2d 76 (1995). I am unable to identify what more plaintiff's counsel could have pleaded or argued in the written submissions to clarify plaintiff's theory for the majority.

Perhaps because the written submissions are adequate to establish plaintiff's claim, the majority attempts to support its narrow interpretation by shifting the focus to counsel's comments at oral argument. *Ante* at 20 n 17. Justice Markman queried plaintiff's counsel, asking him whether he agreed with defense counsel that "all of [plaintiff's] eggs in this case are in the sexual harassment basket and that sexual

---

[11] Plaintiff's Brief in Opposition to Defendant's Third Motion for Summary Disposition, filed June 17, 1998 in the Ingham Circuit Court, pp 4-7; Plaintiff-Appellant's Application for Leave to Appeal, filed June 29, 1998, with the Court of Appeals, pp 7-10; Plaintiff-Appellant's Brief, filed December 3, 1999, in the Court of Appeals, pp 10-12; Appellee's Brief on Appeal, filed December 4, 2002, in the Michigan Supreme Court, pp 6-10.

23

discrimination other than sexual harassment hasn't been pleaded here." Plaintiff's counsel, Mr. Boog, responded.

> *Mr. Boog*: We haven't been given an opportunity to plead that because we could not amend our complaint but at the time we did this it was considered a sexual harassment based on gender based on federal decisions that came down at that time.

Justice Taylor continued this line of questioning.

> *Justice Taylor*: Now, that being the case, you are attempting to come under the sexual harassment, is that right.

> *Mr. Boog*: Yes, but with the understanding that I don't believe the statutory language excludes other types of sexual harassment besides what's in Section 103 and 104, the definitions that we've talked about.

* * *

> *Justice Taylor*: You're not trying to suggest that the activity here fell within the section 103 definition of sex harassment.

> *Mr. Boog*: Yes I do your honor.

When viewed in context, this exchange clarifies that plaintiff alleged a gender- or sex-harassment claim based on MCL 37.2202(1) and MCL 37.2103(i). As noted above, plaintiff's counsel consistently relied on *Malan*, which interpreted MCL 37.2202(1) in light of federal precedent. Counsel's response to Justice Markman concerning federal precedent clarified plaintiff's MCL 37.2202(1) gender-based harassment theory, in light of the fact that the circuit court granted defendant's motion for summary disposition concerning

24

the sexual-harassment claim, thereby precluding an amendment to the complaint that would have clarified the overtly sexual nature of some of the conduct.

In addition, before the Court of Appeals issued plaintiff's judgment, this Court issued *Koester,* which held that harassment as proscribed by MCL 37.2103(i)(iii) need not be overtly sexual in nature. Not wanting to minimize the value of *Koester* (and unaware that a majority of this Court intended to overrule it), plaintiff's counsel clarified that he did, in fact, allege a violation under MCL 37.2103(i)(iii) when asked by Justice Taylor. The clarification, however, does not negate plaintiff's continued reliance on MCL 37.2202(1) or *Malan*.

Nor can the majority rely on plaintiff's use of "sexual harassment" rather than "gender harassment" to artificially narrow the scope of plaintiff's claim. Plaintiff's counsel did allege harassment of a sexual nature, providing specific proof of unwanted sexual communication in the motion for reconsideration submitted to the circuit court.[12] Hence, the

---

[12]See n 2, Brief in Support of Plaintiff's Motion for Rehearing and Reconsideration, filed May 5, 1998, in the Ingham Circuit Court, pp 2-3 and attached documents ("Plaintiff has attached to her motion, the Affidavit of Patricia Perreault, which confirms that the [d]ecedent Virginia Rich was subjected to unwelcome sexual conduct and communication. . . . Plaintiff also has attached several documents that show that [d]ecedent Rich had filed a complaint

**(continued...)**

reference to MCL 37.2103(i)(iii) was not made simply as an attempt to equate gender-based conduct with conduct of a sexual nature—although the concepts are, at times, used interchangeably by the bench and bar. Rather, plaintiff's counsel employed the term that best described the behavior to which plaintiff was subjected, while also drawing upon the protections afforded by MCL 37.2202(1) and *Malan, supra*, in support of a hostile-environment claim not purely sexual in nature.

In response, the majority might claim a narrow reading of plaintiff's briefs is required because plaintiff did not specifically establish that "severe and pervasive harassment" could constitute "discrimination." Assuming this is an accurate reflection of the majority's position, the Court apparently does not find it self-evident that repeated exposure to derisive insults could constitute discrimination —even if unaccompanied by a "tangible employment action." Hence, with the issuance of this opinion, no longer will a victim of repeated racist, sexist, or otherwise offensive conduct be permitted to bring a claim against a remiss employer unless the victim has also been the target of a

---

[12](...continued)
with her employer for sexual harassment as well as contacted several different attorneys regarding allegations of sexual harassment.").

26

tangible employment action or behavior of a sexual nature.

In sum, the majority unfairly neglects plaintiff's arguments and attempts to ignore the difficult and inescapable issue presented by this case, i.e., whether hostile-work-environment actions may be alleged on the basis of nonsexual conduct.

One wonders what the majority gains by adhering to an artificially constrained reading of plaintiff's theory of the case. If done in an attempt to respect its role as a mere interpreter of legislative intent, its decision today has the opposite result, ignoring the text-based evidence that our Civil Rights Act was intended to provide—at a minimum—those protections afforded by federal law, in favor of a stilted interpretation arguably motivated by policy considerations.

## Application

As acknowledged by the majority, plaintiff alleged that her decedent suffered a hostile work environment because of her status as a woman. She maintained that the decedent was subjected to severe and pervasive conduct because of her gender. The decedent's employer purportedly did not resolve the issues or adequately respond to her complaints. These allegations of harassment, motivated by sex-based animus, are sufficient to withstand a motion for summary disposition.

## Conclusion

27

Because the text of MCL 37.2202(1) indicates our Legislature's intent to track the scope of protections provided by federal law, and because federal law recognizes hostile-work-environment claims on any ground articulated in 42 USC 2000e-2, *Meritor, supra,* it is proper to conclude that Michigan employees share the right to assert hostile-work-environment claims on the basis of any ground articulated in MCL 37.2202(1). The text of Michigan's Civil Rights Act cannot reasonably be construed to permit work environments hostile to an employee's religion, race, color, national origin, age, sex, height, weight, or marital status. Further, sexual harassment is not limited to conduct of a strictly sexual nature. For these reasons, I would affirm the judgment of the Court of Appeals. Any other interpretation violates fundamental principles of equality.

Michael F. Cavanagh
Marilyn Kelly